BANK OF STATESVILLE v. TOWN OF STATESVILLE.

*Municipal Bonds—Validity of.*

The municipal authorities of Statesville were authorized by the act of 1861, ch. 176, subject to a vote of the qualified voters of the town, to issue certain coupon bonds, with a provision that they shall be signed by the town-magistrate, treasurer and commissioners thereof. After a vote approving the same, the bonds were issued, but signed only by the town-magistrate and treasurer; *Held,* that the act was directory, and the omission of the commissioners to sign the bonds was not fatal to a recovery upon them. (Remarks of SMITH, C. J., upon effect of payment of interest on the bonds and want of proof as to corporate existence of railroad company.)

(*Belo* v. *Com'rs*, 76 N. C., 489; *Rollins* v. *Henry*, 78 N. C., 342; *McRae* v. *Russell*, 12 Ired., 324.)

CIVIL ACTION tried at August Special Term, 1879, of IREDELL Superior Court, before *Gudger, J.*

The plaintiff bank brought this action to recover the amount alleged to be due from the defendant town on account of the non-payment of certain coupon bonds issued by the defendant in aid of the construction of the Atlantic, Tennessee and Ohio railroad. Verdict and judgment for plaintiff, appeal by defendant.

*Messrs. Reade, Busbee & Busbee* and *R. F. Armfield,* for plaintiff.

*Messrs. J. M. McCorkle, J. M. Clement* and *D. M. Furches,* for defendant.

SMITH, C. J. By an act of the general assembly, ratified and taking effect on January 26th, 1861, the town of Statesville was re-incorporated with prescribed boundaries, and its government committed to a board, consisting of a town magistrate and four commissioners, to be chosen by the electors therein, on the last Monday in February following, and every two years thereafter, on the same day. Acts 1860–'61, ch. 176.

It is enacted in section 7, that the said town magistrate and commissioners, or a majority of them, shall have full power and authority, by and with the consent of the majority of the voters within the limits of the corporation of the town of Statesville, to subscribe a number of shares to the capital stock of any work or works of internal improvement, in which they may have an interest, a sum not exceeding thirty thousand dollars.

The next section directs the manner of ascertaining the will of the electors, and, if it shall favor the proposed subscription, section nine declares, that "it shall be the duty of the said town magistrate and commissioners, to issue coupon bonds, signed by the town magistrate and commissioners, (and) by the town clerk and treasurer" (one and the same person) "in sums not exceeding five hundred dol-

lars, bearing interest at six per cent., payable semi-annually, and redeemable within twenty years from the dates thereof, at any point or points within the state." A proviso annexed, requires the levy of a sufficient tax to meet the interest and principal, as they fall due.

In pursuance of this authority, and after the approval of a popular vote, by the direction, and in behalf of, the board of commissioners, a subscription was made for five hundred shares, of the par value of fifty dollars each, in the capital stock of the Atlantic, Tennessee and Ohio railroad company, and a stock certificate issued therefor. The stock was afterwards sold by the board, for twenty thousand dollars, and the proceeds applied to the use of the town. In part payment for the stock, the board caused to be prepared and, on its behalf, authenticated by the signatures of the town magistrate and the treasurer, coupon bonds, in the sum of fifteen thousand dollars, and delivered to the agent of the railroad company, of which the following is the form:

STATE OF NORTH CAROLINA,
*Statesville, Iredell County.* · $500.00

On the first day of July, Anno Domini eighteen hundred and eighty-one, the town of Statesville promises to pay to the Atlantic, Tennessee and Ohio railroad company, or bearer, the sum of five hundred dollars, with interest at the rate of six per centum per annum, payable semi-annually on the first days of January and July in each year. This bond is issued in accordance with an act passed by the general assembly of the above state, in part payment of a subscription of twenty-five thousand dollars, made by said town, under said act.

In testimony whereof, the town of Statesville has authorized the town magistrate to sign, and her treasurer to coun-

tersign, and the seal of said town to be affixed, this the first day of July, 1861.

> . C. L. SUMMERS,
> *Town Magistrate.*

C. A. CARLTON,
> *Treasurer.*

Coupons attached to correspond.

These bonds were accepted by the treasurer of the railroad company, and a written acknowledgment thereof given, but, under an arrangement between the treasurer of the company and the treasurer of the town, were left in the hands of the latter to be sold for the benefit of the company, and most of them were disposed of through this agency, and such as were not, and the moneys received for such as were sold, were delivered to the company. A portion of the sold bonds were bought by R. F. Simonton, who conducted a banking business in the name of The Bank of Statesville, the coupons from which, as from others (from what source derived does not appear), are now in suit, at the instance of the plaintiff, his executrix, made a party during the progress of this action. The bonds sold to the testator by the company's agent were purchased, part at 90 and part at 95 cents on the dollar. The interest on all the bonds issued was regularly paid by the board from 1867 up to 1873, as proved by a witness who filled the office of clerk and treasurer during that interval, but no interest has been paid since.

The instructions asked and refused, may be condensed, and are embodied in these propositions:

1. The bonds are void for non-compliance with the directions of the statute, and the absence of the names of the commissioners.

2. The payment of interest was not an act of ratification, which imparts any additional efficiency to the bonds.

3. There being no proof of the act of incorporation, nor of the corporate existence of the said railroad company, the bonds are a nullity, for the want of an obligee.

The substance of the charge given was, in effect, that the non-conformity of the bonds to the statute, if an objection was remediable by a ratification, and if the bonds were issued by the defendant, and accepted by the railroad company in payment *pro tanto* for the stock, and the stock appropriated to the benefit of the town, and interest afterwards paid, this would be a recognition and ratification of the debt and impart to it a binding force, and that the mode of transfer of the bonds and their remaining in the hands of Carlton, then constituted an agent of the company, for their sale, and their subsequent sale to the testator, would not affect their obligation in his hands as a *bona fide* purchaser for value before maturity and his right as such to a recovery. Upon the evidence, and under these directions, the jury found that there was a subscription of $25,000 made by the defendant to the stock of the railroad company, and that the plaintiff as executrix, was the *bona fide* owner of the coupons in suit.

The exceptions are untenable or immaterial.

1. The corporate organization of the Atlantic, Tennessee and Ohio Railroad Company and its capacity to contract are recognized by several unequivocal acts of the board of commissioners, which if not conclusive, put the burden of showing that it does not legally exist upon the defendant. They consist in, first, accepting the stock issued to the board as property possessing value; secondly, selling the same and using the proceeds for the benefit of the town; thirdly, in issuing and delivering the bonds to its agent and treasurer.

2. While a ratification cannot remove from the bonds the infirmity of a want of power to issue them, which involves a like want of power to confirm, the instruction in this regard is harmless, since, if valid in their inception,

they needed no subsequent confirmation, and this point will be considered in noticing the remaining exception. 1 Dillon Mun. Corp. § 385.

3. The want of the signatures of the commissioners of the town : The numerous references made in the argument do not bear directly upon the question of the effect upon the validity of the bonds of a deviation in the form of execution from that prescribed in the law, by whose authority they are issued.

In the cases cited for the plaintiff, objection is taken to the want of compliance with some essential condition prerequisite to the exercise of the power of making a binding municipal obligation, and this defect it was proposed to show, in contradiction of the recitals contained in the instrument against a *bona fide* purchase without notice. This was held inadmissible against the declaration of such compliance made by those who were to determine the fact and issue the bonds. The cases determined in the supreme court of the United States are collected and examined with great care and ability by Judge DILLON in his two works. 1 Dill. Mun. Corp. § 416, *et seg.*, Dill. Mun. Bonds. See the recent cases *Block* v. *Bourbon Co.*, 99 U. S., 686 ; *Pompton* v. *Coop. Un.*, 101 U. S., 196. In harmony with these is *Belo* v. *Com'rs*, 76 N. C., 489, wherein the rule is thus concisely stated by BYNUM, J.: "If a municipal corporation has the power to issue bonds only on a compliance with conditions precedent, as for instance as here in pursuance of a popular vote, and the bonds are issued, the presumption is that the conditions have been observed, and they are *prima facie* valid, though the defendant may show the contrary, unless he is estopped by his own acts from doing so."

In the cases referred to by the defendant's counsel, the authority was conferred under restrictions and the mode pointed out in which it was to be exercised, admitting of no substantial departure. In both references, the objection is

based upon a total want of power. The case to which our attention was called by a brief newspaper paragraph, decided in the supreme court of the United States, and since reported in 101 U. S., 665, (*Scipio* v. *Wright*) falls within the same principle, as a brief examination will show. The state of New York, on the 6th day of April, 1862, passed an act " to authorize any town in the county of Cayuga, to borrow money for aiding in the construction " of certain railroads, and in its first section authorized certain officers " to borrow on the faith and credit of the town, such a sum of money as they may deem necessary, not to exceed $25,000, for a term not to exceed twenty years, with such rate of interest as may be agreed upon, not exceeding 7 per centum per annum, and to execute therefor, under their official signatures, a bond or bonds, in which the interest shall be made payable semi-annually, &c. All moneys borrowed are directed to be paid over to the officers of the road to be expended in its construction and maintenance. Some of the bonds issued under the act were delivered to the road in payment for stock subscribed in the name of the town. It was held, in deference to the construction put upon the statute by the state court, and with some reluctance, that this delivery of unsold bonds was not a compliance with the law, and that they were void, in the hands of the plaintiff who took them with notice of the manner in which they had been acquired. The decision does not meet the enquiry how far the omitted signatures of the commissioners, who assented to the authentication of the town magistrate for all, impairs the obligation assumed on behalf of the town. Here, every material condition is met, and the only defect the absence of the names of some who ought to have signed the bonds. This question is not involved in the adjudications referred to.

We are of the opinion that the omission is not a fatal defect, and that the statute in this regard is directory only. There are analogies supporting this view. Thus, every

order or judgment made by a judge of the superior court, the statute declares shall be authenticated by his signature, (Acts 1868-'69, ch. 93, § 6), and yet the judgment is valid without. *Rollins* v. *Henry*, 78 N. C., 342. So a bond given for the first instalment of stock instead of a payment in money as the law directs, is nevertheless effectual to bind the obligor. *McRae* v. *Russel*, 12 Ired., 324.

Without referring to other cases of like import, we think that while the commissioners ought also to have signed the bonds for their authentication and the protection of the public, the town having received the consideration is responsible for the indebtedness thus incurred on its behalf, and represented in the bonds issued therefor. There is no error, and the judgment is affirmed.

No error.                                        Affirmed.