Taylor, Chief Justice.
 

 This is an action for money had and received, in which the first question to be decided is, whether the bank bills paid by the plaintiff are to be considered as money? It is certain that the spirit of modern decisions is to consider securities which are the current representation ot money, as money for all civil purposes; for in
 
 Barclay
 
 v.
 
 Gooch,
 
 where the person to whom the plaintiff had become surety for the defendant, had- consented to take the plaintiff’s promissory note in payment as money, the taker was allowed to recover against his principal in an action for money paid. (ZEsp. 571.) It-was afterwards held, that a bond and warrant of attorney given by the plaintiff could not be considered as money; but the Court do not deny the propriety of the decision in
 
 Barclay
 
 v.
 
 Gooch,
 
 but distinguish between a bond
 
 (not then
 
 negotiable) and other securities which are so. (3
 
 East
 
 172.) In
 
 Longchamp
 
 v. Renney, it was held, that an action for money had and received, lay against a person who had received a masquerade ticket from the plaintiff, who had been instructed to sell it, and who had paid the owner for it, under the threat of an arrest; for as the defendant did not produce the ticket, it was a fair presumption that he had sold it. (1
 
 Doug.
 
 138.)
 
 The
 
 case
 
 of Israel
 
 v.
 
 Doyles
 
 went to the length of deciding that the
 
 *570
 
 action for money had and received, would lie on an ar-ce,^c(] or(jPr -vvhich the accentor refused to pay. (1
 
 H. Bl.
 
 239.) But this was probably extending the doctrine too faPj aI){j might not again be sanctioned. (3
 
 East
 
 172.) It seems, however, to be clearly settled, in respect to bank notes, that they shall be considered as cash in the ordinary dealings of men, unless they show by their contract, that they do not so treat them. On ibis subject the language of Lord
 
 Mansf.eld
 
 is peculiarly strong. He says, that bank notes do not resemble and ought not to be compared to goods, securities, or documents for debts; that they are not esteemed as such, but are treated as
 
 money,
 
 as
 
 cash,
 
 in the ordinary transaction of business by the general consent of mankind; which gives them the credit and currency of money to all intents and purposes. They are as much money as guineas themselves are, or any other current coin, that is used in common payments as money or cash; they pass by a will which bequeaths all the testator’s money or cash; and are never considered as securities for money, but as money itself. On payment of them, whenever a receipt is required, the receipt is always given as for money, not as for securities or notes.
 
 Miller
 
 v.
 
 Race,
 
 (1
 
 Burr.
 
 455.) In pursuance of the same principle, bank notes form a good consideration for an annuity, though the act requires a consideration of money; and that if a tender is made in bank notes, and no objection is made on that account, the Courts have constantly considered such a tender as good. (3
 
 Term 554.)
 
 In the recent case of
 
 Pickard
 
 v.
 
 Bankes,
 
 an action for money had and received was held to lie against a stake holder, who had received country bank notes as money, and paid them over wrongfully to the original staker, after he had lost the w'ager; the Court clearly deciding, that if the defendant received them as money, and all parties agreed to treat them as such at the time, he shall not now turn round, and say they were only paper and not money; as against him it is so much money received by him. (.13
 
 *571
 

 East
 
 20.) From tlicse cases I collect tl¡ at the law is now settled, that for the purposes of this action bank notes are to be considered as money; and the policy of such a rule is infinitely more applicable in this state than in the country where it has been established; for it may be said that it forms here almost exclusively the only circulating medium.
 

 In considering the other question, whether the case was properly submitted to the jury, it is not to be controverted, since the case of
 
 Hargrove
 
 v.
 
 Dusenbury,
 
 that a payment in acounterfe.it bank bill is a nullity, and that the person receiving it may recover the amount. This being the general rule, it is incumbent on the defendant to show, that the parties have, by an express contract, restrained its operation in this particular case, and that the plaintiff agreed to discharge the defendant from the risk. There was evidence in the case applicable to this inquiry, and it is precisely the one that the jury should have been instructed to make. If the jury, omitting this line of investigation, discharged the defendant because they adopted the presumption stated by the Court, that a person receiving a bank bill that was endorsed took it on the credit of the bank and the endorsement, they did so, in my opinion, on improper grounds. An endorsement upon a bank bill does not necessarily imply a guarantee of the bill, for it may be made, and generally is made, for various purposes unconnected with the paper’s responsibility. It is most frequently made to be able to identify the note in case it is lost or stolen, and it is sometimes made by the receiver in the name of the person who passed to him a suspicious note, that he might be enabled to trace it if it should turn out to be a counterfeit. In truth, if it is ever intended as a guarantee, it is done under very peculiar circumstances, and such as may be, and ought to be proved, to take it out of the general rule; for this I take to be law, that an endorsment on a bank note of itself, signifies nothing in the way of contract. I think
 
 *572
 
 it very probable that the jury were diverted from the pre--per inquiry by the abstract proposition stated to them by the Court; and that instead of considering whether the plaintiff had taken the note upon his own risk, they hastened to the conclusion, that he had taken it upon the responsibility of the indorser. Upon the merits of the case, as they may be evolved by the testimony, I do not presume to give any opinion. But I decidedly think that the case has not. been laid before the jury in such a way as to enable them to decide the question really in controversy. On that account I am in favor of a new trial.
 

 Hat,i. and Henderson, Judges, being of this opinion also, per
 
 iotam curiam,
 

 Judgment reversed.