### R. P. MILLS v. W. L. BONIN.

(Filed 24 February, 1954.)

1. **Evidence § 39: Bills and Notes §§ 3, 29—**

   In an action on notes between the original parties thereto, the payee is entitled to set up the defense of total failure of consideration, and evidence in support of such defense does not violate the parol evidence rule.

2. **Bills and Notes § 3—**

   The presumption of consideration arising from the fact that notes are under seal is rebuttable.

MILLS v. BONIN.

**3. Same—**

A total failure of consideration for a note under seal renders it unenforceable in the hands of any person other than a holder in due course, G.S. 25-33, and in an action on notes given for the purchase price of property defendant maker may set up this defense.

**4. Contracts § 5—**

As a general rule, the term "consideration," as affecting the enforceability of contracts, consists of some benefit or advantage to the promissor, or some loss or detriment to the promissee.

**5. Bills and Notes § 29: Partnership § 9b—Evidence of total failure of consideration for notes given for net worth of partner's interest held for jury.**

Plaintiff payee instituted this action on notes executed by defendant. Defendant's evidence tended to show that he executed the notes under an agreement to buy plaintiff's interest in the partnership of the parties, the notes to equal the net worth of the plaintiff's interest therein, that plaintiff managed the business entirely, that defendant had no knowledge and relied completely upon plaintiff's representation of the condition of the partnership, that through error an audit showed the value of plaintiff's interest in a certain sum which was reduced by negotiation to a stipulated amount, which plaintiff paid partly in cash and partly in promissory notes, one of which notes he had paid prior to the institution of plaintiff's action on the balance, and that shortly after the execution of the notes and bill of sale another audit was made disclosing that plaintiff had no net worth in the business, so that the consideration for the payment of the cash and the execution of the notes did not in fact exist. *Held:* Defendant's defense of total failure of consideration should have been submitted to the jury, and peremptory instruction for plaintiff for the amount of the notes was error.

**6. Money Received § 1—**

Where a party pays in good faith, in ignorance of the facts, a sum of money to another for certain property, rights or interest, which in fact is worthless, so that there is a total failure of consideration, the money may be recovered under principles of justice, and where the purchaser sets up the defense of total failure of consideration in the seller's action for the balance of the purchase price represented by notes, it is error to nonsuit the purchaser's counterclaim to recover the cash paid.

BOBBITT, J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Armstrong, J.,* April Term 1953 of FORSYTH.

Civil action by plaintiff to recover $5,000.00 with interest, represented by five one thousand dollar promissory notes under seal.

The plaintiff's evidence tended to show these material facts. For some time prior to 1 May 1952 the plaintiff and the defendant operated as partners a business known as Bonin-Mills, dealing in building materials. The defendant started the business, and sold 49% of it to the plaintiff, who gave his promissory notes in payment of the purchase price—the

purchase price was $7,000.00—which has been paid. When the partnership was formed the defendant was building houses, and it was agreed that the defendant was to take no part in the business, and to draw no salary. That about 1 May 1952 the plaintiff and the defendant agreed to dissolve the partnership. On 3 May 1952 the plaintiff and the defendant executed and delivered a Bill of Sale, which is summarized: The plaintiff has this 3rd day of May 1952, in consideration of $6,800.00 paid to him—$800.00 in cash and 6 notes of $1,000.00 each under seal bearing interest, and due and payable on dates specified in the Bill of Sale— bargained, sold and delivered to the defendant all his right, title and interest in and to the assets of the partnership known as Bonin-Mills: it is understood and agreed that as part of the consideration the defendant assumes all liabilities of the partnership. The defendant paid the $800.00 in cash and the first one thousand dollar note due 1 July 1952. The defendant admitted in his answer the execution and delivery of the notes sued upon. That the notes sued upon are all past due, and the defendant refuses to pay them.

A summary of what the defendant's evidence tends to show, which evidence is supported by the allegations of the answer, is as follows: After the plaintiff became a partner, the plaintiff managed and operated the partnership business entirely. The defendant was not familiar with the condition of the business, but relied completely upon the reports of the business the plaintiff gave him. That he believes the plaintiff reported the net income to him for 1951 to be $26,000.00; that this was after a correction was made, the net income originally reported was $53,000.00. On cross-examination the plaintiff testified he reported to defendant that the partnership had earned $41,000.00 in 1951—that October and November 1951 showed $11,934.62 profits. The defendant's evidence further tended to show that the agreement was that the defendant would buy the plaintiff's interest in the business, and would pay therefor a sum equal to the value of the net worth of the plaintiff's interest in the partnership. That it was mutually agreed that an auditor should be employed to show what this net worth was. That in February 1952 the defendant learned the business had not made the big profits the plaintiff had reported to him. Among the assets of the partnership was a construction contract in Salisbury, which the plaintiff and defendant agreed had a net worth of $21,000.00. In preparing the audit prior to the purported sale, the auditor carried the net worth of the Salisbury contract into accounts receivable twice, once in the amount of $19,000.00 and again in the agreed amount of $21,000.00, thus showing the assets of the partnership to be some $19,000.00, or more, than they were. About 15 days after the purported sale was made the defendant's attention was called to this mistake. He had made another audit, which tended to show this mistake,

but he had paid $800.00 in cash and the first one thousand dollar note, before he received the last audit. That the last audit tended to show that the plaintiff had no interest in the business, and had withdrawn from the business some $645.00 or more in excess of his interest therein. That the partnership business owed more than $95,000.00 of debts, which defendant has to pay. That plaintiff had nothing to sell; he had a liability instead of an asset. The item of good will was not used as an asset in the audit. The first audit tended to show that plaintiff's interest in the partnership was $7,000.00 or $9,000.00. That in negotiations between plaintiff and defendant, plaintiff's interest was reduced to $6,800.00—this was before the last audit. That defendant was willing to pay $6,800.00 for plaintiff's interest until he found out there was nothing for plaintiff to convey. The last audit tended to show that plaintiff withdrew $21,000.00 from the business, and that plaintiff had overdrawn his capital account in the business, and owed it $645.00: that on 29 February 1952 the liabilities of the partnership exceeded the assets $1,005.28. The defendant contends there was a total failure of consideration, and that the plaintiff should recover nothing; and that he should recover from the plaintiff the $1,800.00 he has paid him.

At the close of all the evidence upon motion of the plaintiff the court dismissed the counter-claim of the defendant for $1,800.00, and the defendant excepted.

The court submitted one issue to the jury: "In what amount, if anything, is the defendant W. L. Bonin indebted to the plaintiff R. P. Mills on the five notes sued on?"; and directed the jury to answer it $5,000.00 with interest from 1 May 1952, which the jury did.

The court entered judgment upon the verdict, and the defendant excepted and appealed.

*Eugene H. Phillips for plaintiff, appellee.*
*Dallace McLennan and John R. Surratt for defendant, appellant.*

PARKER, J. This is an action between the payee and the maker of the five notes. No rights of third parties are involved. The defendant has pleaded total failure of consideration as a defense. The rule prohibiting the introduction of parol evidence to vary, modify or contradict the terms of a written instrument was not violated by the introduction of evidence by the defendant tending to show a total failure of consideration. *Swift & Co. v. Aydlett,* 192 N.C. 330, 135 S.E. 141; *Chemical Co. v. Griffin,* 202 N.C. 812, 164 S.E. 577; *Galloway v. Thrash,* 207 N.C. 165, 176 S.E. 303; *Royster v. Hancock,* 235 N.C. 110, 69 S.E. 2d 29.

The notes sued upon are under seal, which purports a consideration, but such presumption is rebuttable. *Patterson v. Fuller,* 203 N.C. 788,

167 S.E. 74; *Lentz v. Johnson & Sons, Inc.,* 207 N.C. 614, 178 S.E. 226; *Royster v. Hancock, supra.*

G.S. 25-33 provides that absence or failure of consideration is matter of defense to a negotiable instrument as "against any person not a holder in due course . . ."

It is the general rule in this jurisdiction, and elsewhere, that a total failure of the consideration for a note under seal renders it unenforceable in the hands of any person other than a holder in due course. *Jewelry Co. v. Stanfield,* 183 N.C. 10, 110 S.E. 585; *Swift v. Etheridge,* 190 N.C. 162, 129 S.E. 453; *Patterson v. Fuller, supra; Perry v. Trust Co.,* 226 N.C. 667, 40 S.E. 2d 116; *Royster v. Hancock, supra;* 10 C.J.S., Bills and Notes, p. 626.

As a general rule the term *consideration,* as affecting the enforceability of contracts, consists of some benefit or advantage to the promissor, or of some loss or detriment to the promisee. *Cherokee County v. Meroney,* 173 N.C. 653, 92 S.E. 616; *Exum v. Lynch,* 188 N.C. 392, 125 S.E. 15; *Stonestreet v. Oil Co.,* 226 N.C. 261, 37 S.E. 2d 676.

The defense of absence or failure of consideration may be made to an action on notes given for the purchase price of property. 7 Am. Jur., Bills and Notes, p. 950, where numerous cases are cited.

We said in *Fair v. Shelton,* 128 N.C. 105, 38 S.E. 290: "To render a promise void upon an entire failure of consideration, it must appear that the consideration upon which it was supposed to be based, *did not in fact exist,* and its nonexistence was unknown to the parties. For instance, where the grantor sells and conveys land to which he has no title (both parties assuming that he has) the grantee gets nothing—there is a failure of consideration, but otherwise should the grantee purchase such right, title and interest as grantor might have, for here the maxim of *caveat emptor* applies. *Foy v. Haughton,* 85 N.C. 168." (This is a case of quitclaim deed—parenthesis ours.) "Likewise if a vendee gets that which he buys, though worthless (in the absence of deceit), for he buys upon his own judgment and at his own risk, in not requiring a warranty. So also in the absence of fraud, the buyer is liable for the price agreed to be paid for worthless stock in a corporation, where he receives that for which he contracted, though it was known by the seller to be worthless." See also *Johnston v. Smith,* 86 N.C. 498.

"While some decisions appear to have reached a contrary conclusion, it is often held that a sale or transfer of property does not constitute consideration for an undertaking on a bill or note if the seller or transferor completely lacks title to the thing sold or transferred, except where the sale is intended to be merely of such title as the seller has, if any." (For instance a quitclaim deed, 8 C.J., p. 227—parenthesis ours.) 10 C.J.S.,

Bills and Notes, p. 614.   See also Williston on Contracts Rev. Ed. Secs. 1570 *et seq.;* Anno. 1 A.L.R. 2d, p. 37, Sec. 16, p. 52, Sec. 19.

In the case under consideration the defendant's evidence tended to show that the defendant agreed to buy the plaintiff's interest in the partnership for a sum equal to the value of the *net worth* of the plaintiff's interest; that the plaintiff managed the business entirely; that the defendant was not familiar with the condition of the business, relying completely upon what the plaintiff told him of its condition; that it was mutually agreed between the parties that an auditor should be employed to show what the *net worth* of the plaintiff's interest was; that this audit by mistake showed the *net worth* of plaintiff's interest was $7,000.00 or $9,000.00 and that the parties by negotiation reduced the amount to $6,800.00. That the defendant then paid to plaintiff $800.00 in cash, and executed and delivered to him $6,000.00 in promissory notes, and the plaintiff executed to the defendant a bill of sale for his interest in the business. The defendant's evidence further tended to show that about 15 days after the execution of the notes and bill of sale the defendant's attention was called to the mistake in the first audit, and that he had another audit made which disclosed that the liabilities of the business exceeded its assets, and that the plaintiff had no *net worth* in the business, that he had nothing to convey; that the supposed consideration for the $800.00 in cash and the six promissory notes *did not in fact exist.*   That before the defendant learned this he had paid the plaintiff one promissory note for $1,000.00.

The plaintiff contends that the evidence tends to show there was no total failure of consideration.

We are of the opinion that the defendant's defense of a total failure of consideration should have been submitted to the jury upon proper instructions, and that the peremptory charge of the court was error. *Jewelry Co. v. Stanfield, supra; Perry v. Trust Co., supra; Finance Co. v. O'Daniel,* 237 N.C. 286, 74 S.E. 2d 717.

If, upon a new trial, the jury should find there was a total failure of consideration, the defendant will be entitled to recover from the plaintiff the $1,800.00 he paid him upon the plain principle of justice that the defendant through ignorance of the facts paid the plaintiff $1,800.00 for nothing.   *Anderson v. Hawkins,* 10 N.C. 568; *Page v. Einstein,* 52 N.C. 147; 48 C.J., Payment, p. 768 (where numerous cases are cited); 70 C.J.S., Payment, Sec. 158; 40 Am. Jur., Payment, Sec. 214.   In stating this conclusion we must not be understood as expressing any opinion as to the weight or conclusiveness of the evidence for that is the province of the jury.   G.S. 1-180.

The defendant's assignment of error to the lower court's dismissing his claim for the recovery of the $1,800.00 he paid the plaintiff is sustained.

The defendant is entitled to a New Trial, and it is so ordered.

New Trial.

BOBBITT, J., took no part in the consideration or decision of this case.